Good morning. May it please the court. Peter Walkinshaw on behalf of the United States. I'd like to reserve about four minutes for rebuttal. Four? Four. And I'll do my best to watch my time. The touchstone of the Fourth Amendment is reasonableness. And the officer in this case, in every respect, conducted a reasonable traffic stop. Conducting the stop by himself on a rural Nevada highway, the officer took basic safety precautions. Let me just ask you, isn't the real question in this case, you know, did he overstay his welcome? In other words, was it he was doing other things during the process of this traffic stop, and that was a problem that's created by this case? I think the district court certainly came to that conclusion, Your Honor, but I think as laid out in our papers, each of the findings of the district court or the legal conclusion the district court made to support that conclusion were erroneous. The district court found that it was unreasonable for the officer in this case to remove the defendant from his vehicle. Well, I agree. That was clearly an issue. She was in error in that. That's wrong. Please, Your Honor. I'm here to answer questions. But, I mean, is this going on? I mean, if you look at the video, which we all did, you know, it's what, 45 minutes or something of that, you know? And it still wasn't done by then. Well, Your Honor, I think it's clear from this Court's precedence, the Supreme Court's precedent, that the relevant timeframe is the timeframe until which the officer acquires reasonable suspicion that a crime has been committed, at which point the officer is free to investigate that issue separate and apart from the original mission of the traffic stop, which in this case was a speeding violation. Can I just check on the timing? There was a stop. The officer asked Mr. Steinman to get out of his vehicle, come and join him in the patrol car. And that was, what, 10 minutes, 5 minutes, 6 minutes, something like that? Yeah, it was brief, Your Honor. That's correct. Okay. And then he ran, he had seen the ammunition, right? That's correct, Your Honor. It was in plain view from the camera. Okay. Then he ran the search, found he was a felon. Correct. So that changed the whole situation, right? In our view, yes, Your Honor. The district court provided us. And so you, in effect, started a new clock. That's correct, Your Honor. So the question then becomes whether it was reasonable under the Fourth Amendment, once he's seen the ammunition, at least the box of ammunition, found this gentleman was a felon, to further investigate that, right? That's correct, Your Honor. Okay. And in your view, why did the district court tack those two together? Tack the subsequent. In other words, the initial stop, then you find he's a felon, and then going from there.  Well, Your Honor. Seems to have just tacked it all together as if it were one continuum. That's correct, Your Honor. We believe that the district court erred in doing so. The district court clearly stated, for the record, its view, that there was no justification for the officer to investigate any violation of federal law. We think that's just completely inconsistent with Virginia v. Moore, which examined a case in which officers conducted an arrest that was prohibited by state law. Here we have a case where there's no one's identified any clear statement of Nevada law one way or the other, but under Virginia v. Moore, it clearly doesn't matter either way. The question is, does the Fourth Amendment of the federal constitution find the officer's actions unreasonable when he searches an automobile based on probable cause? We actually have a case law that indicates that the presence of ammunition strongly suggests the existence of a firearm. That's correct, Your Honor. I think our best case for that is United States v. Baker. I think it's important to read that case in conjunction with a case relied upon by the defendant, which is United States v. Nora. Now, Nora stands for the proposition that one gun does not necessarily imply more guns, and we think that's fair, but not really relevant in this case. In United States v. Baker, the defendant was found with a gun on his person, but ammunition that did not fit that gun. And the Court found that that gave the police probable cause to search the car. Now, it's clear from Nora that the basis for that probable cause is not the gun they found on his person. It's the ammunition. The ammunition is the important thing because it has no function beyond being placed in a gun and fired. I wanted to ask you about the federal-state distinction, and I'm sure you're very much aware of all of it. For example, in California, Harry, you can do whatever you want with pot. You can smoke it, grow it, ingest it, whatever you want to do with it. But it still schedules C, federal violation. You can't bank it. You can't do any of those things. Correct, Your Honor. So we have this struggle of an officer who sees something that is a violation of federal law but not a violation of state law. Based on the government's position, is the existence of the, in this case, the ammunition, presumption of the firearm enough to overcome the problem of it's okay under state law to have ammunition? Well, Your Honor, under Virginia v. Moore, the fact that it may be a problem under state law is irrelevant to whether or not the exclusionary rule of the Federal Fourth Amendment will be applied. Now, I know that there are some district court cases from California relied upon by the district court. It's cited in a footnote in our papers in which the marijuana issue that you referenced effectively resulted in suppression of the evidence in those cases. Now, the government's position is that those cases were wrongly decided and are not binding on this court. However, this is an easier case than those cases because in those cases, California law affirmatively prohibited those peace officers from conducting any kind of search for marijuana. It's the relevant statute cited in each of those cases. Now, we think under Virginia v. Moore, which also looked at conduct by state police officers that was prohibited, it's totally irreconcilable with the conclusions of those cases. But that being said, we have nothing in allegance in this case. There's nothing under Nevada law that speaks to any kind of prohibition for Nevada peace officers searching for evidence of federal crime. The bottom line under Virginia v. Moore and just from your perspective common sense, there's just simply no problem. We look at the fact that there was ammunition. Our case law says that's a strong indication of firearms. Tie that with the rummaging around in the back before the stop, no problem from your perspective. Is that right? That's right, Your Honor. There's really two ways that the court can get to probable cause here. There's probable cause of a federal violation, which we think is sufficient to justify the search of the car, which is the ammunition in itself. But we also would say if the court doesn't wish to engage with Virginia v. Moore for purposes of resolving this case, it could also very easily find that probable cause was established by the fact that the officer saw ammunition in the car, the fact that Mr. Simon denied having felony convictions on his record. When he was confronted with the fact that he did have felony convictions on his record, he denied that the ammunition that he had already admitted to was in the car. So we think that, and, of course, combined with the fact that he was furtively moving to conceal something when Officer Trooper Boyer first pulled up that's visible in the dash cams. So basically this just, as you go along, there are additional triggers. Yes. He said he didn't have any convictions. It turns out he's a felon. You start tying these things together, and it's not one continuum. It's new starting blocks, in effect. Yes, Your Honor, although I think it's worth noting that all of the information that Trooper Boyer needed to establish probable cause, either for the federal or the state violation. So either probable cause that there was ammunition or a gun in the car and that he was a felon was achieved either at the moment that he read the criminal history report that he requested from dispatch, established a federal violation, and then immediately after that he asked Steinman about, you know, his prior convictions and the ammunition in the car. And Steinman began to deny things that he had already admitted to. And so at that point, we would say the probable cause had already attached, but it certainly attached at the point that Steinman denied, began to give inconsistent answers regarding things that Trooper Boyer had already seen in the car. And do I recall correctly that Mr. Steinman also began to sweat profusely and was acting nervous? Yes, Your Honor. The district court found that he was quite compliant but did acknowledge in its oral ruling, I believe it characterized it as slight nervousness, but acknowledged that he was nervous and there was sweating. I believe the defense makes the point. And I think to a degree it's a fair one that this was a stop conducted in August in rural Nevada. So it was hot out. There's perhaps an alternative explanation for the sweating and the nervousness, but officers are not required to rule out every alternative explanation for suspicious behavior. That's simply just not something required. I have two questions, but I don't know. Go ahead. Two questions. The first one of which is at what exact point in time are you saying that there was sufficient probable cause? I think the moment that we think, and there's a little bit of disagreement between the government and the defense here, Your Honor, but we think that the moment that the officer received the information regarding Steinman's criminal history, which happened about 15 minutes into the stop, nothing more was needed. I believe they say that he needed to read it. It perhaps took him a minute or two to do so. So you're saying that asking for a person whom you're stopping for a traffic stop, asking for their criminal history is not an unacceptable increase of the amount of time taken for the traffic stop itself. That's correct, Your Honor. That's black-letter law in this circuit under both Hilton and Taylor. Let me ask you this, though. If you have a basis for doing the traffic stop and you're doing the traffic stop, and obviously a lot of things that you're doing in the course of a traffic stop, for example, is getting their criminal history and stuff of that sort, if the officer also does inquiries in areas that are totally unrelated to the traffic stop, related to potential crimes, does that extend or make the traffic stop something improper for the amount of time? In other words, you're still doing what you're doing, in other words, getting his prior criminal history, but you're also talking about a lot of other stuff that has no basis or connection to either the traffic stop or anything else, apparently, but may be evidence of some other crime. Does that do anything? The question, Your Honor, I believe for this Court is whether or not what are referred to as unrelated inquiries measurably extend the duration of the stop. And it's also black-letter law in this circuit. I believe the clearest case on point is United States v. Mendes, which is cited in our papers. Judge Reinhart, writing for the Court, held that it was not an illegitimate extension of the stop for officers to conduct inquiries that happened in parallel to a valid investigation of the traffic stop itself. So I believe in that case the officers had run a license check. And while they were waiting for the results of that license check, they were permitted to ask the defendant kind of whatever they wanted because those questions don't extend the duration of the stop. That's exactly what happened here, Your Honor. And the ammunition is that trigger, if you will. Correct, Your Honor. Do you have another question? No. Do you want to save four minutes? Can I ask one quick question? Yeah. When I looked at the video, I didn't see the ammunition in the video. It was supposedly on the floor of the ---- That's correct, Your Honor. It was on the passenger side. Is there any description of how large a box it was? It's supposed to be green-colored something, but is there any evidence of that? I don't believe that it was testified to in great detail in the hearing itself, but I believe that there are attachments to the motion to suppress in the record detailing what was found. I don't recall if there's a very specific description of the particular sort of ammunition. Thank you. Do you want to reserve balance of your time? I would, please. Thank you. Very well. All right. Mr. Barron, please. Good morning, Your Honors, and may it please the Court, Jeremy Barron on behalf of Mr. Steinman. There are three issues in this appeal. I'm hoping to cover all three today. Unless the panel directs me otherwise, I'll start with prolongation, move on to the government's affirmative waiver of the overbreadth issue, and conclude with probable cause. Beginning with prolongation, this was a 90-minute-long traffic stop that was prolonged in multiple respects throughout the 90 minutes without reasonable suspicion. But for today's purposes, I would like to focus on a particular three-minute period of the stop because the government's reply brief really narrows the scope of the dispute between the parties on that three-minute period. So this is a period that begins at 3.59 p.m., when Mr. Steinman shows the officer his insurance information, ending at 4.02, which is when the officer calls in the request for the criminal history check. This is a period where the parties agree the trooper has an obligation to be diligently working on the ticket, and the parties agree that the trooper is engaging in unrelated inquiries, asking unrelated questions during this three-minute period that lasts for at least 30 seconds. By our count, it's more like 45 seconds. You find that 35 seconds, 45 seconds too long? That's correct. Any prolongation is prolongation. There is no de minimis exception to the rule. Do you have any case law that would suggest you're correct about that? Yes. So Rodriguez itself overruled the Eighth Circuit's de minimis rule. In Landeros, this Court described Rodriguez and explains that any slight prolongation is an impermissible prolongation. Even when the officer had observed the ammunition? There's no reasonable suspicion at that point. I believe the government has explained its view today. There was no reasonable suspicion until 4.06 at the earliest, and I'm focused on the period leading up to 4.02. Honestly, I find that startling. I get a lot of things you've got going for you, but the idea that a 30- to 45-second delay somehow disqualifies what happened thereafter is startling to me. How can that be? I would again emphasize Landeros, which says Rodriguez prohibits even slight prolongations. And the Eleventh Circuit's en banc decision in Campbell. That's the Eleventh Circuit. We don't care about the Eleventh Circuit. We don't care about any other circuit for purposes of this case. Understood, but the circuits are uniform in agreeing that Rodriguez overruled the concept of a de minimis rule. Most of the circuits leading up to Rodriguez had adopted this rule that de minimis brief extensions are permissible so long as the overall length of the stop is reasonable. I apologize. Can you give me the minutes again that you're talking about from when to when? Yes, so 3.59 is when Mr. Steinman shows the insurance information, and so at that point the officer has everything he needs in order to write the ticket. 4.02 is when the trooper calls in the request for the criminal history check. Oh, 3.59 to 4.02, and then the response from that inquiry. When does the response come in? About 4.06. Well, that's only like 7 seconds. You said 3.59 to 4.02? 3.59 p.m. I can give specific seconds. I said 3.59 to 4.02? Yes. Oh, okay. It's questioning over this three-minute period. At 4.02 p.m. is when the request for the criminal history check is made.  At 4.06 p.m., four minutes later, is when. My understanding was that he was writing the citation as he was conversing. Is that correct? So what the district court concluded was that the officer was slow playing the citation process and that his focus on the questioning was distracting him from diligently completing the ticket. And that is a factual determination under this Court's precedent, whether the unrelated So you think the Fourth Amendment really determines whether or how focused a police officer is while writing a citation? Under Rodriguez, the question is whether the unrelated inquiries are measurably extending the stop. And under this Court's precedent interpreting Rodriguez, that's a factual determination. And the Eighth Circuit has a pre-Rodriguez case talking about a blended process where you have an officer spending some time working on the ticket, some time asking questions, some time working on the ticket, some time asking questions. So your perspective is that while the officer is writing the ticket, he can't really talk about anything other than that while he's writing it out, and if he does, that somehow he has violated Rodriguez. Is that your position? He can talk about other things so long as his focus is on the ticket and the questions How long, in your view, does the officer have to write out the ticket? It's going to depend on a case-by-case basis. Here, the trooper testified it typically takes him 15 minutes. We're not saying there's a specific time limit that all officers have to operate within. What we're saying is that if there is unrelated questioning that is measurably extending the stop, that is impermissible. And whether unrelated questioning is measurably prolonging a stop is a factual determination that the district court makes in the first instance with the benefit of presiding over the evidentiary hearing and seeing the trooper's testimony first  From your perspective, at what point did the officer see the ammunition? It appears he sees it upon the initial approach to the car.  So he got a traffic stop. He sees ammunition, triggers something. Does that change the nature of the inquiry here? I mean, he's writing out the ticket. From my view of the video, he's perfectly polite. He's really very polite, very cordial. Suggests they go in another car, probably partly for safety, but also because people are standing out in the traffic. He's writing the ticket, waiting for the information to come in. He certainly has a basis for asking for that based upon seeing the ammunition, did he not? I apologize. Could you repeat the end of the question? I'm sorry. Did the officer not have a basis for asking for the criminal history based on seeing the ammunition in the car? Our view is that the unique criminal history request in this case is not permissibly related to officer safety. But setting that aside, even if there was an officer safety basis for requesting the criminal history check so late into the stop, there is still ample prolongation leading up to that. And for this 3-minute period, I want to emphasize the government doesn't dispute that there is potential prolongation of 30 to 45 seconds within this 3-minute period between 359 and 402. They're not saying it's, oh, it's so short it can't qualify as prolongation. What they're saying is that the officer was multitasking, and the district court did not make a lack of diligence finding that covers this 3-minute period. And that is an incorrect interpretation of the district court's oral ruling. The district court — The district — you want us — we have to look at district court's finding, but we look for clear error, right? That's correct. So if we disagree based on the video and so on, then that's just — we find a clear error, right? Clear error is a deferential standard because the district court is able to make its factual findings with the benefit of seeing the evidentiary hearing firsthand, watching the trooper testify, assessing his demeanor and credibility. And here you have a district court judge providing an oral ruling immediately after the evidentiary hearing ends when this live testimony is still fresh in the judge's mind. And that's the type of factual finding that courts — But it was primarily based on the video, wasn't it? It's based on the video and the trooper's testimony and the — Was the trooper's testimony inconsistent with the video in any way? The question that the district court was answering is whether the trooper was being diligent and these unrelated questions were sort of incidental and not adding time to the stop, or whether the trooper was focused on his investigation and was slow-playing the citation process. Let me ask you. I apologize. At what point in time was the arrest — I'm sorry, the vehicle stop occur? At what point in time during the day? You said — I do everything by seconds and minutes, so I can't figure out when you say between 3 and 59. When did these things start? Yeah. I'm sorry if the conversion is not working. But the stop begins at 3.51 p.m. Okay. 3.51. Okay. Thank you. Eight minutes later is when Mr. Steinman shows the insurance information at 3.59. And does the record show what the traffic was? Or was this by a busy freeway? Was it by a busy street? Or was it a quiet neighborhood? Where was it? It's a one-lane-in-each-direction highway in rural Nevada. Unless there are further questions on prolongation, I would like to turn to — I have some questions. So you agree that at most the multitasking led to a 30- to 40-second prolongation? Is that your argument? In this particular three-minute period. We think there's prolongation before and after.  Okay. But is there cases that say that 30 seconds is prolongation? Landero says slight prolongation. Rodriguez — But what was the time limit? What was the time in that, Landero? I don't know what the exact time calculation was in Landero's. But, again, Landero says slight prolongation. Rodriguez overrules the Eighth Circuit's de minimis rule. And to the extent that the Eleventh Circuit's decision in Campbell is relevant, I would —  All of this is, you know, overarching the reasonableness inquiry, right? So 30 seconds. How is that unreasonable? Because the Supreme Court in Rodriguez overruled this overall reasonableness standard. So leading up to Rodriguez, all of the circuit courts, or most of the circuit courts, had adopted a rule that says so long as the overall length of the stop is reasonable and so long —  No. But I'm talking about the 30 — the reasonableness of 30-second prolongation. Yeah. I agree that that's different. But 30 seconds — if he dropped his pen, that would take 30 seconds. But that would not — Yeah. Could that affect — could suppression be based off of that? No, because dropping a pen is not an unrelated inquiry. It has to be an unrelated inquiry, and it has to measurably prolong the stop. And if it does, there is no de minimis exception. And courts across the country have found prolongations based on similar time periods. This is well within the heartland of the time period. So there are cases that show — that suppress base of the 30-second prolongation? I hesitate to cite Campbell again, because it is an Out-of-Circuit decision, but it is an Eleventh Circuit en banc decision that collects cases from other circuits with similar time frames. Okay. So so much for de minimis non curat lex, right?  Okay. Moving on to the affirmative waiver of overbreadth. The district court made it abundantly clear that it was granting suppression on three independent bases — the first, prolongation, the second, lack of probable cause, and the third, the overbreadth of the warrant. In the government's opening brief, they challenged prolongation and probable cause but say not a word about overbreadth. In our answering brief, we responded and said that because the district court — because the government had not briefed this issue, they had either waived or forfeited it. Okay. Let's just agree arguendo that the government's waived that issue. What about the vehicle exception, though? Doesn't the law permit them to search the vehicle without a warrant under the circumstances of this case? There is an automobile exception to the warrant requirement. But here the officers went and got a warrant, and they searched pursuant to the warrant, and the warrant is invalid. I understand that, but, you know, again, California says superfluity does not vitiate under 3537 of the civil code. This is admittedly a different state. But the reality is if there are two bases for searching the vehicle, one of them was not done properly, but you have another one, what's the problem? So that's the government's merits argument that they discuss in about a page of their reply brief, and they are raising that argument for the first time on appeal in their reply brief. It was not raised before the district court. We have not had a chance to respond to the merits of that argument. If the court wants to reach the merits of that, we would ask for supplemental briefing. I can address it briefly today. Now, please. But before I do, I just want to emphasize the government is not asking the court to reach the merits of that argument. They are saying the district court did not make an overbreadth ruling, and therefore this court should not reach the overbreadth ruling that does not exist. With all due respect to counsel for the government, I don't understand how you can read the district court's oral ruling that way. I'd be happy to cite the four pages of the oral ruling where it is making its overbreadth determination. The government is asking this court not to reach the overbreadth ruling. And this is a very similar situation to the situation in Lower v. Thomas, which is a case from this court, a 2254 postconviction case, where the district court granted relief on three claims. The State appealed. They discussed two of the three claims. Roberts. I think that's pretty clear. Can you talk to the go move on to the probable cause question? Certainly. Let me just briefly address the merits question on overbreadth as far as the automobile exception. The police have a choice. They can choose to do the warrantless search or they can choose to get a warrant and act pursuant to the warrant, and that's what they did. And I don't think many courts would be receptive to the converse of the government's decision to assume that there was a warrantless search based on exigent circumstances. There's a challenge to that. The court says there was no exigent circumstances. But the government takes the position, well, there was probable cause to go and get a warrant, so we can imagine a counterfactual world where the police go and get the warrant and they have probable cause and they search pursuant to the warrant. So even though the warrantless search was invalid, they could have gotten the warrant and that would have been fine. That argument wouldn't track. The vehicle exception is there. The vehicle exception is there, whereas the warrant thing is not. That's the difference between your example that you're citing to it. Your example doesn't make sense. That may be a difference, but again, it's a choice that the police can make what they want to do, and what the government is saying is you can ignore the choice they made and assume a counterfactual where they did something differently. But if they had the right to do it at that point in time, they'd like to try to be more cautious to get a warrant, and for some reason the warrant is overbroad as issued, not their fault. They still have the right to begin with to do the search, so I don't understand what your argument is. In other words, your argument is if they do something, which is even more generous to the defendant, but it turns out wrong because of what the officer does in issuing the warrant, they should get penalized for that. The police have a choice of how to act, and once they make that choice, the Court should review what they have done based on the choices they have made. If the Court has any questions about that, we would ask for supplemental briefing on the merits of the overbreadth issue. But the Court should not reach the overbreadth issue because the government is affirmatively asking this Court not to do so. Okay. So if you're right, the government's waived that issue. We still have the vehicle exception, do we not? The overbreadth ruling was an independent basis for suppression. The government is not challenging that. Damn it. But say that's right, arguendo. Okay. But you still have the vehicle exception. That's the argument about overbreadth that the government has previewed in its reply brief, but that's an argument about overbreadth and why the overbreadth of the warrant does not lead to suppression. The district — the government is ultimately asking this Court not to reach that issue, and therefore, the Court should not reach that issue and affirm on the basis of the district court's overbreadth ruling, or at least allow for supplemental briefing on this waiver question as well as the merits of overbreadth. I see my time is up. I'm happy to answer questions.  It is. Other questions? Judge, I'm going to have a question. No, don't worry about it. It's good. Oh, okay. Thank you. Thank you very much. I'd like to take the issues in reverse order that my friend on the other side took it from. Just very quickly, I think this waiver issue can be disposed of by referring the Court to page 148. Speak up a little bit. You're a little bit — I beg your pardon, Your Honor. I refer the Court to page 148 of the record, in which the district court has a If the officers had probable — I'm paraphrasing. The officers had probable cause. I don't need to reach the issue of whether or not the warrant's defective, right? Because if you have probable cause, you can search the car. Now, the disagreement between the parties is whether or not the officers getting a warrant that is defective somehow prevents them from searching a car that they are authorized to search through an exception to the warrant requirement. If they don't need a warrant, does getting a bad one prevent them from doing a search? The answer to that question is no. There's no authority anywhere for that. And there's also really no basis to conclude on the stray — there's one word in the district court's oral opinion. It basically says, I have multiple independent bases, is what the district court said. She doesn't identify getting a bad warrant as one of them. And it just simply isn't. There's no basis for it. There's no authority anywhere for that proposition, as the Court — So from your perspective, page 148 of the record, you're going to see that the district court basically was saying, well, why do we need to get into this? Is that what you're saying? Yes. I would encourage the court to review that part of the record in particular. I think it's just — it's just not plausible that the district court came to this totally unprecedented, unfounded ruling. And I gather the government's position, opposite of what your friend is saying, is that the vehicle exception exists independently. The fact that they were trying to be extra cautious, even if it — arguendo was overbroad, it's irrelevant because you still have the vehicle exception. Is that correct? Correct, Your Honor. But, again, it's not an issue for this court on appeal because the district court didn't really reach that. Do you think the district court didn't even reach that? No. Moving to the 35- to 40-second delay, I think I do want to take exception with the characterization of it as a 30- to 45-second delay. That's not true because the officer was working in parallel during that time. So it's not like the officer diverted from the valid mission.  I thought the argument was over the three minutes, 30- to 40-seconds was extraneous. So in the 30- to 40-seconds, he is asking questions about where Steinman is from and what he did for a living, but he's making casual conversation while he's working on the ticket. I encourage the court to watch this portion of the video, and you will see that while these questions are being asked, the officer is, if anything, kind of half paying attention to Steinman. The officer is not required by the Fourth Amendment to sit in stony silence as he fills out a ticket, especially if he's moved the officer into his car so he can keep an eye on him, he can keep control of the situation while the ---- So it sounds like you just disagree that there was a 30- to 40-second delay. There's no. We don't think there was any appreciable delay at all, Your Honor. And the district court, when saying that the process was slow-played, I'd refer the court to page 12 of the record, where it identifies the portions that it feels are extraneous questioning. It's the questioning after the criminal history check comes back. The district court found the ---- I see I'm over my time. I just want to conclude very quickly. The district court's basis for slow-playing, for prolongation, is that the officer was not allowed to take Steinman out of the car, run the criminal history check, or ask him questions about the criminal history check after it came back. And all of that's valid. This sort of, you know, brief interchange while filling out the ticket is clearly valid under Mendes, which says officers can ask questions while they're pursuing the mission of the stop in parallel. So this is a multitasking situation, right? Correct, Your Honor. And again, it's multitasking over the course of 30 to 45 seconds. Yeah. Other questions by my colleagues? Nope. I think not. Just to give you plenty of opportunity, counsel, both of you are welcome to submit promptly a 28-J letter addressing the issue of what happens if there's a vehicle exception, but the officers seek a warrant, and the warrant's over a broad arguendo. What happens there? What does the law say about that? And, Your Honor, just so I understand, I also would welcome any questions from opposing counsel regarding procedure, but simultaneous 28-J letters? 28-J letters. And no responses? No, just simultaneously. Simultaneously, yeah. I mean, I don't know it's going to change anything, but we want to give you an opportunity to address that issue. Should we give them a date? What? Should we give them a date? Oh, yeah. Let's do that within, let's see, today's the, what, the 5th? Yeah. So let's say by the 15th. And does the Court have a page or word limit in mind for these? Let's just say five pages. This is not a big, long issue, okay? This should be really straightforward. So five pages, okay? Understood. Thank you, Your Honor. Thank you, Your Honor. Thanks for your time. Thank you. The case just argued is submitted.
judges: SMITH, BUMATAY, Wu